IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEVERLY LOWERY,** | : | |
| **Plaintiff** | : | No. 1:20-cv-01932 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **JOHN C. HOUSER and** | : | |
| **TOWNSHIP OF NORTH CORNWALL,** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Defendant Township of North Cornwall ("Defendant Township")'s motion to dismiss Count III of Plaintiff Beverly Lowery ("Plaintiff")'s amended complaint for failure to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 13.)  For the reasons that follow, Defendant Township's motion will be granted.

**I.    BACKGROUND**

**A.    Procedural Background**

Plaintiff initiated the above-captioned action on October 20, 2020 by filing a complaint in this Court against Defendant Township and individual police officers John C. Houser ("Houser") and Joseph Fischer ("Fischer") (collectively "Defendants").  (Doc. No. 1.)  The complaint asserted: (1) state law tort claims and a federal claim for excessive force pursuant to 42 U.S.C. § 1983 against Houser; (2) a claim for failure to intervene against Fischer; and (3) a claim for municipal liability against Defendant Township pursuant to 42 U.S.C. § 1983 and <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  (<u>Id.</u>)  Defendants responded by filing a partial motion to dismiss on December 28, 2020.  (Doc. No. 8.)  In response, Plaintiff filed an amended complaint on January 11, 2021, which omitted her failure to intervene claim and removed Fischer as a named defendant

in the caption. (Doc. No. 12.) In all other respects, Plaintiff's claims are the same as those asserted in her original complaint. (Id.)

The Court subsequently issued an Order denying Defendants' initial motion to dismiss as moot. (Doc. No. 14.) On February 1, 2021, Defendants filed a renewed partial motion to dismiss Plaintiff's Monell claim against Defendant Township (Doc. No. 13), and thereafter filed a brief in support of the motion (Doc. No. 15). Plaintiff filed a brief in opposition to Defendants' motion on March 1, 2021. (Doc. No. 16.) Defendants did not file a reply, and as the time for filing a reply has expired, the motion to dismiss is ripe for disposition.[1]

**B.     Factual Background** [2]

On the evening of October 27, 2018, Plaintiff was in her home. (Doc. No. 12 ¶ 11.) Also present was James Ferguson ("Ferguson"), who lived with her as a home health care aide and helped Plaintiff, a blind woman, perform her daily living activities. (Id. ¶ 13-14.) Prior to 7:41 p.m. that evening, Plaintiff's downstairs neighbor reported a noise complaint to the North Cornwall Police Department. (Id. ¶ 17.) Officer Joseph Fischer responded to the complaint; he called Plaintiff, advised her of the noise complaint, and ordered her to lower her music's volume. (Id. ¶ 18.) Fischer also asked after Plaintiff's husband Mike Lowery, who had an active warrant for his arrest. (Id. ¶ 20.) Plaintiff informed Fischer that she was no longer in a relationship with Mr. Lowery and that their divorce was due to be finalized "in a few weeks." (Id. ¶ 22.) Plaintiff alleges that Fischer followed up on his phone call by heading to the scene and staking out Plaintiff's

---

[1] As noted, Defendants' motion (Doc. No. 13) seeks to dismiss only the Monell claim against Defendant Township. Therefore, this Memorandum does not address the sufficiency of claims asserted against the Individual Defendant.

[2] The following factual background is taken from the allegations of Plaintiff's amended complaint. (Doc. No. 12.)

residence. (Id. ¶ 24-25.) Fischer eventually advanced to Plaintiff's apartment "for the stated purpose to issue a summary citation for 'Noise/Loud Music,'" though Plaintiff maintains there were no loud noises coming from her apartment at the time. (Id. ¶ 25-27.)

Ferguson answered the door. (Id. ¶ 28.) Allegedly believing Ferguson to be Mike Lowery, Fischer "began to investigate a possible violation of a PFA that Beverly Lowery had secured against Mike Lowery." (Id. ¶ 34.) Ferguson refused to identify himself to Fischer, at which point Plaintiff alleges Fischer told Ferguson that "he was Mike Lowery and that he was being arrested." (Id. ¶ 38-39.) Fischer did not believe Plaintiff or Ferguson that Ferguson was not in fact Mr. Lowery, so Ferguson retrieved his identification and gave it to Fischer. (Id. ¶ 44, 50.)

An altercation between Fischer and Ferguson began after Ferguson's identification fell onto the floor and Fischer stepped on it. (Id. ¶ 51.) Plaintiff alleges that Ferguson asked Fischer to move his foot so he could retrieve the identification and was ignored. (Id. ¶ 52.) Ferguson grabbed Fischer's leg in an attempt to lift his foot. (Id. ¶ 52-53.) Fischer then arrested Ferguson for assault on a police officer and attempted to physically restrain him. (Id. ¶ 53-54.) The altercation continued and a second officer, Houser, arrived on the scene to aid in the arrest. (Id. ¶ 55-56.) Plaintiff continued to yell that Ferguson was not Mike Lowery, at which point Plaintiff alleges that Houser "forcefully shoved" Plaintiff, who fell to the ground and was injured. (Id. ¶ 60.) Plaintiff's son, who lives in the rear unit of the building, heard the commotion, entered the apartment, and found his mother distressed and on the ground. (Id. ¶ 61-62.) When Plaintiff's son asked Houser why he shoved his mother, he replied, "for our protection." (Id. ¶ 66.)

After the incident, Emergency Medical Services transported Plaintiff to Good Samaritan Hospital, where she was treated for injuries. (Id. ¶ 71-72.) Plaintiff alleges that Fischer confronted Plaintiff at the hospital, in front of her son and medical staff, with a version of the story in which

Plaintiff's son pushed her and caused her injuries. (Id. ¶ 71, 73-75.) Plaintiff was discharged from the hospital that evening but returned to the Emergency Department the next day. (Id. ¶ 77.) The second evaluation found "a fracture in Plaintiff's right index finger, left shoulder injury, low back injury and soft tissue swelling near her left eye and Plaintiff was diagnosed as having undergone a physical assault." (Id.) Plaintiff sought various medical treatments as a result of her injuries, including diagnostic testing and physical therapy. (Id. ¶ 91.) Plaintiff was later charged with "Hindering in the Apprehension of James Ferguson and a summary offense for disorderly conduct towards a police officer." (Id. ¶ 82.)

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Rule 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions set forth as factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the United States Court

of Appeals for the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted). A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678. The Third Circuit has specified that in ruling on a Rule12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

### III. DISCUSSION

#### A. Applicable Legal Standard

Count III of Plaintiff's amended complaint asserts a claim against Defendant Township for failure to properly train, supervise and discipline its officers regarding the proper use of force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.[3] In Monell

---

[3] The Court notes that in Count III, Plaintiff generally alleges a number of other deficiencies in Defendant Township's policies and customs involving the failure to train, supervise and discipline its officers in the broad areas of use of force, legal arrests, and malicious prosecutions.

v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court established that municipalities can be held liable for constitutional violations under 42 U.S.C. § 1983. See id. at 690. However, municipal liability is limited to those actions for which the municipality itself is actually responsible. See Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Specifically, liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." See Monell, 436 U.S. at 694. That is, a municipality is subject to Section 1983 liability to the extent it maintained an unconstitutional custom or policy that caused the constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis that they were inflicted by its employees. See id.

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." See City of Canton v. Harris, 489 U.S. 378, 385 (1989). A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'" See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)). In order to recover from a municipality under this theory of liability, a plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." See City of Canton, 489 U.S. at 385. Complaints alleging municipal liability under Section 1983 are not subject to heightened pleading standards. See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

---

(Doc. No. 12 at 17-21.) Because all Section 1983 allegations against a municipal defendant are analyzed under the Monell standard and because Plaintiff relies on the same set of facts for each of the claims, all of Plaintiff's general allegations against Defendant Township are considered together here.

6

However, a plaintiff attempting to establish a Monell claim must "identify a custom or policy, and specify what exactly that custom or policy was." See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

In the alternative, a municipality may be liable under Section 1983 for a failure to train, monitor, or supervise; however, the failure alleged in such a circumstance must amount to "deliberate indifference to the constitutional rights of persons with whom the police come in contact." See City of Canton, 489 U.S. at 388. In order to establish deliberate indifference, a plaintiff must generally show the failure alleged "has caused a pattern of violations." See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Where a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious." See City of Canton, 489 U.S. at 390 n.10. Further, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" See Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)).

### B.   Parties' Arguments

Defendant Township argues that Plaintiff fails to plead any facts "sufficient to outline the contours of the allegedly objectionable policy or custom" as required by Monell, aside from "boilerplate allegations that the Township failed to 'train' and 'supervise' its officers." (Doc. No. 15 at 7-8.) Defendant Township notes that to the extent Plaintiff does allege a custom, that custom is not unconstitutional. (Id. at 9.) Defendant Township maintains that Plaintiff relies on a misunderstanding of Fourth Amendment jurisprudence by asserting officers must "use the least

7

amount of force possible or 'no force at all,'" rather than the reasonable force standard found in the Fourth Amendment.  (Id. at 9.)  In arguing against Plaintiff's failure to train allegations, Defendant Township cites Plaintiff's inability to demonstrate a "pattern of unconstitutional behavior" or the "specific training [that] was deficient or lacking."  (Id. at 10.)  Defendant Township maintains that "blanket reference to prior accounts [and] complaints is not sufficient to create a pattern of violations."  (Id.)  (internal quotation marks and citations omitted).  Finally, Defendant Township states that Plaintiff never causally links the municipality to the alleged constitutional violation.  (Id. at 11.)

In response, Plaintiff argues that Defendant Township's failure to train can be inferred from the actions of Fischer and Houser on the evening of the incident.  (Doc. No. 16 at 9.)  These actions include the alleged use of excessive force, Fischer's "choices and [the] malicious manner in which he handled his purported investigation," and Fischer's interaction with Plaintiff at the hospital following the event.  (Id.)  Plaintiff also argues that "[t]he complete lack of supervision or discipline of Houser and Officer Fischer's conduct during the night in question is evidence of the Municipal Defendant's custom of tolerating excessive force, and / or deliberate indifference to the use of excessive force."  (Id. at 11.)

### C.      Whether the Court Should Dismiss Plaintiff's Monell Claim

Upon review of Plaintiff's complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiff's Monell claim against Defendant Township.  Plaintiff does not sufficiently allege the existence of a municipal policy or custom or the existence of a pattern of prior similar constitutional violations that would put Defendant Township on notice as to a need for additional training.

Plaintiff loosely alleges that Defendant Township failed to properly train, supervise and discipline its officers regarding the proper use of force, which resulted in Houser's use of excessive force. Plaintiff also generally alleges numerous deficiencies in Defendant Township's policies and customs involving the failure to train, supervise or discipline its officers in the broad areas of use of force, legal arrests, and malicious prosecutions. (See Doc. No. 12 at 17-21.)[4] However, the Court cannot find a single fact alleged among these many recitations in support of Plaintiff's claims. Instead, a review of Plaintiff's amended complaint reveals conclusory assertions echoing the appropriate legal standard without providing factual support. See Twombly, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Plaintiff does not identify any affirmative policy or custom on the part of Defendant Township that caused her alleged constitutional injury. See McTernan, 564 F.3d 636 at 658 (stating that "[t]o satisfy the pleading standard, [Plaintiff] must identify a custom or policy and specify what exactly that custom or policy was"); see also Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (stating that "[a] Plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries"). In the absence of an unconstitutional policy or custom, Plaintiff puts forth a failure to train theory that is non-specific and legally conclusory. Plaintiff offers no facts establishing a pattern of constitutional violations that Defendant Township deliberately ignored by failing to train its officers. See Estate of Roman, 914 F.3d 789 at 798

---

[4] For example, a representative paragraph in the amended complaint alleges: "Upon information and belief, Municipal Defendant failed to promulgate and enforce a policy relating to the use of force which is not in violation of the laws of the Commonwealth of Pennsylvania and the United States Constitution, thereby causing and encouraging police officers, including Defendant Houser to violate the rights of citizens such as Plaintiff." (Doc. No. 12 ¶ 106.)

9

(stating that "[i]n the absence of an unconstitutional policy," plaintiffs must "demonstrate that a city's failure to train its employees reflects a deliberate or conscious choice") (quotation marks omitted).  Plaintiff thus fails to establish any causal connection between Defendant Township's actions and the actions that allegedly caused Plaintiff's constitutional injury.  See Forrest v. Parry, 930 F.3d 93, 109 (3d Cir. 2019) (stating "[t]he alleged deficiency in a training program must be closely related to the alleged constitutional injury").

Finally, Plaintiff notes that the Third Circuit recognizes a three-part test whereby failure to train claims may successfully plead deliberate indifference, but Plaintiff's amended complaint similarly fails to satisfy this standard.  See Estate of Roman, 914 F.3d at 798 (stating "[a] plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights") (internal quotation marks and citations omitted).  In Estate of Roman, a consent decree between the city and the United States, along with a newspaper article covering the city's history of police training, provided evidence of the municipality's knowledge of "the types of constitutional violations mentioned in the amended complaint," which were "widespread and causally linked to [the] alleged injury."  Id. at 799.  Here, Plaintiff's factual allegations relate solely to the events of October 27, 2018 and do not establish any other incidents of constitutional violations.  Plaintiff makes no mention of Defendant Township's actual response to the incident alleged or any other similar incidents.  Instead, Plaintiff relies on the routine nature of noise complaint investigations and the alleged misconduct of Fischer and Houser during this single incident to support an inference that Defendant Township "tolerated and ratified a pattern and practice of unjustified and illegal use of force." (Doc. 12. At 17.)  Without more, Plaintiff's

10

assertions fail to demonstrate the deliberate indifference necessary to survive a motion to dismiss. Accordingly, the Court will dismiss Plaintiff's Monell claim.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss (Doc. No. 13) will be granted. An Order consistent with this Memorandum follows.

---

[5] District courts must generally extend plaintiffs an opportunity to amend a complaint before dismissal in civil rights cases. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). A court can refuse to permit an amendment on grounds of bad faith, undue delay, prejudice, or futility. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citing Smith v. NCAA, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)). In this case, the Court cannot conclusively determine at this time that Plaintiff could not plead facts related to municipal policies or a pattern of prior constitutional violations with respect to Defendant Township. Accordingly, the Court's dismissal of this claim is without prejudice to Plaintiff's right to further amend her complaint.